UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK SWASEY and TRISHELE SWASEY,

　　　　　　　　Plaintiffs,

　　　v.

SETERUS, INC.; CITIMORTGAGE, INC.; FEDERAL NATIONAL MORTGAGE ASSOCIATION,

　　　　　　　　Defendants.

No.  2:16-cv-01633-TLN-EFB

**ORDER**

　　　　This matter is before the Court pursuant to Defendants Seterus, Inc. and Federal National Mortgage Association's (collectively, "Defendants") Motion to Dismiss Plaintiffs Mark Swasey and Trishele Swasey's (collectively "Plaintiffs") Complaint.  (ECF No. 7.)  Plaintiffs oppose this motion.  (ECF No. 9.)  Defendants filed a reply.  (ECF No. 13.)  For the reasons set forth below, the Court hereby DENIES in part and GRANTS in part Defendants' Motion to Dismiss, (ECF No. 7), with leave to amend.

///

///

///

///

///

I.    FACTUAL AND PROCEDURAL BACKGROUND

This matter concerns the property at 547 Penstock Drive, Grass Valley, California 95945 ("Property"). (ECF No. 1 at 6–7 ¶ 2.) Plaintiffs allege they obtained a $264,000 loan from Aegis Wholesale Corporation in September 2004 secured by a Deed of Trust ("DOT"). (ECF No. 1 at 7, 9 ¶¶ 3, 15.) Plaintiffs allege Citi serviced Plaintiffs' loan from September 2004 until at least February 2014. (ECF No. 1 at 9–10 ¶¶ 17, 24.) Plaintiffs allege Citi modified Plaintiffs' loan in 2012, reducing their monthly payment from $1,519.73 to $1,484.06. (ECF No. 1 at 9 ¶ 22.)

Plaintiffs allege defendant Federal National Mortgage Association ("Fannie Mae") acquired Plaintiffs' mortgage "pursuant to a Corporate Assignment" of the DOT. (ECF No. 1 at 7 ¶ 4.) Plaintiffs allege they received a letter from defendant Seterus, Inc. ("Seterus") around February 13, 2014, stating Seterus would be "the servicer and debt-collector" of the mortgage, "on behalf of Fannie Mae," the creditor. (ECF No. 1 at 7–8 ¶ 24; ECF No. 1 at 52–53.) Plaintiffs allege Seterus was the servicer "at all times relevant to the allegations." (ECF No. 1 at 7 ¶ 5.)

Plaintiffs allege Seterus, in the February 2014 letter, directed Plaintiffs to make all mortgage payments to Seterus. (ECF No. 1 at 9–10 ¶ 24; ECF No. 1 at 52–53.) Plaintiffs allege Citi informed Plaintiffs in March 2014 that Plaintiffs' monthly payment was reduced again from $1,484.06 to $1,395.02. (ECF No. 1 at 10 ¶ 25.) Plaintiffs allege they made their monthly payments to Citi for March and April 2014. (ECF No. 1 at 10 ¶ 25.) Plaintiffs allege that in May 2014 they made their monthly payment for May 2014 to Seterus. (ECF No. 1 at 10 ¶ 26.)

Plaintiffs allege they missed four payments from June 2014 through June 2015 after Plaintiff Mark Swasey suffered an injury and was unable to work, but resumed making regular payments to Seterus in January 2015 after his injury "subsided" and he was able to work again. (ECF No. 1 at 10 ¶¶ 27–28.) Plaintiffs allege that beginning in May 2015, when Plaintiffs "were about caught up on their payments," Seterus refused to accept further payments from Plaintiffs "unless the full balance was rendered." (ECF No. 1 at 10 ¶ 29.) Plaintiffs allege Seterus returned three payments in June and July 2015. (ECF No. 1 at 10 ¶ 30.) Plaintiffs allege Seterus then invited Plaintiffs to apply for a loan modification. (ECF No. 1 at 10 ¶ 30.) On June 12, 2015, a Notice of Default was recorded against the Property. (ECF No. 1 at 10 ¶ 31.)

Plaintiffs allege they submitted a modification application to Seterus in summer 2015. (ECF No. 1 at 10 ¶ 32.)  Plaintiffs allege Seterus delayed evaluating their application until the Property was sold in foreclosure to Fannie Mae in May 2016.  (ECF No. 1 at 10–13 ¶¶ 32–52.)

Plaintiffs allege Seterus requested numerous, lengthy documents from Plaintiffs through the end of 2015.  (ECF No. 1 at 10–11 ¶ 33.)  Plaintiffs allege Seterus did not give Plaintiffs a single point of contact but said anyone who answered their call could assist them, representatives placed Plaintiffs on hold for up to four minutes when they called to ask a question, and they then directed Plaintiffs to resubmit documents.  (ECF No. 1 at 11 ¶ 34.)  Plaintiffs allege that in December 2015, they also applied for the Keep Your Home California ("KYHC") Program for funds to pay their deficiency and reduce their principal balance.  (ECF No. 1 at 11 ¶ 35.)

Plaintiffs allege Seterus sent a letter on January 24, 2016, stating Plaintiffs' modification application was "facially complete," that evaluation would begin, and Seterus would notify Plaintiffs of its decision "within 30 days of receipt of a completed application."  (ECF No. 1 at 11 ¶ 36.)  Plaintiffs allege they called Seterus several times a week from January to May 2016 and Seterus asked Plaintiffs to submit additional documents, though Seterus had previously told Plaintiffs their application was complete.  (ECF No. 1 at 11 ¶ 37.)

Plaintiffs allege that on April 12, 2016, they received a Notice of Trustee's Sale stating the Property was to be sold on May 5, 2016.  (ECF No. 1 at 12 ¶ 40.)  Plaintiffs allege they contacted Seterus on April 14, 2016, and told Seterus they had applied for KYHC funds, but Seterus told Plaintiffs "there were no records of KYHC on Plaintiffs' account" and that Plaintiffs must work directly with Seterus to modify their loan.  (ECF No. 1 at 12 ¶ 41.)  Plaintiffs allege Seterus told Plaintiffs on that call "that although the foreclosure process had started, the foreclosure sale would not occur because Plaintiffs were being evaluated for a loan modification."  (ECF No. 1 at 12 ¶ 41.)  Plaintiffs allege Seterus requested 26 pages of additional documents including a Borrower's Assistance Form and tax records, that Plaintiffs faxed immediately all documents Seterus requested, and Seterus told Plaintiffs their application was "facially complete."  (ECF No. 1 at 12 ¶¶ 41–42.)

///

Plaintiffs allege Seterus told them on April 15, 2016, that if Seterus needed more information it would contact Plaintiffs. (ECF No. 1 at 12 ¶ 43.) Plaintiffs allege Seterus notified Plaintiffs on April 19, 2016, their application was "facially complete," Seterus would begin evaluation and would render a decision within 30 days of receipt of a completed application, and Seterus would contact Plaintiffs if it needed any further information. (ECF No. 1 at 12 ¶ 44.) Plaintiffs allege they learned on April 25, 2016, they did not qualify for the KYHC program. (ECF No. 1 at 13 ¶ 46.)

Plaintiffs allege they called Seterus on April 22, 27, and 28, 2016, and were told the modification department was closed each time. (ECF No. 1 at 13 ¶¶ 45, 47, 48.) Plaintiffs allege they called Seterus on April 29, 2016, and Seterus informed them "that no further documents were required for the modification application." (ECF No. 1 at 13 ¶ 49.) Plaintiffs allege they called Seterus on May 2, 2016, and Seterus requested an updated profit and loss statement "which Plaintiffs [provided] immediately to Seterus." (ECF No. 1 at 13 ¶ 50.) Plaintiffs allege they next contacted Seterus on May 12, 2016, and Seterus informed Plaintiffs it had "no record of the [P]roperty on [their] system, it was sold in a foreclosure sale May 5th." (ECF No. 1 at 13 ¶ 51.) Plaintiffs allege this was the first they knew the Property had been sold. (ECF No. 1 at 13 ¶ 51.)

Plaintiffs allege they discovered a notice on the Property door the same day, May 12, 2016, stating that the Property "is now owned by Fannie Mae" and that the title and interest was transferred to Fannie Mae and recorded on May 11, 2016. (ECF No. 1 at 13 ¶¶ 52–53.) Plaintiffs allege they never received notice from Seterus granting or denying their modification application. (ECF No. 1 at 13–14 ¶¶ 53–54.)

Plaintiffs brought suit in the Superior Court of California in the County of Nevada asserting eight claims against Defendants, including: (1) negligence; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) wrongful foreclosure; (5) violation of California Civil Code § 2923.6(c); (6) violation of California Civil Code § 2923.7; (7) violation of Business and Professions Code § 17200; and (8) intentional infliction of emotional distress. (ECF No. 1 at 6.) Fannie Mae and Seterus removed the action to federal court, (ECF No. 1), and now move to dismiss all claims for failure to state a claim, (ECF No. 4).

## II.    STANDARD OF LAW

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim ... is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). Additionally, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

///

///

## III. ANALYSIS

Defendants move to dismiss all eight claims, arguing Plaintiffs failed to allege sufficient facts against Defendants to support any claim for relief.  (ECF No. 7 at 2.)  Plaintiffs base several of their claims on Defendants' alleged violations of provisions of the California Homeowner Bill of Rights ("HBOR"), California Civil Code § 2923.4, *et seq*., specifically on § 2923.6(c) and § 2923.7.[1]  (ECF No. 1 at 6.)  Defendants argue the protections under § 2923.6(c) do not apply to Plaintiffs.  (ECF No. 7 at 22–23.)  As resolution of this issue will simplify analysis of several claims, the Court will address this issue at the outset.  The parties briefed the issue most fully in relation to Plaintiffs' fifth claim, so the Court will discuss the fifth claim first.

### A.    Fifth Claim: Violation of California Civil Code § 2923.6(c)

Plaintiffs allege Defendants violated California Civil Code § 2923.6(c) by proceeding with the foreclosure sale while Plaintiffs had a complete modification application pending with Seterus.  (ECF No. 1 at 22–24 ¶¶ 102–06.)  Defendants argue Plaintiffs allegations show they are not entitled to § 2923.6(c)'s protections for two reasons: Plaintiffs had already received a modification in 2012 and defaulted on that modification beginning in 2014; and Plaintiffs did not adequately document their changed financial circumstances for Seterus.  (ECF No. 7 at 22.)  Defendants argue both § 2923.6(c)(3) and §2923.6(g) exclude dual tracking protections in these circumstances.  (ECF No. 7 at 22–23).

Section 2923.6(c) generally provides borrowers with a right to be evaluated for a residential mortgage modification, and it prohibits dual tracking — in which a lender pursues foreclosure while the borrower's complete modification application is pending evaluation.  CAL. CIV. CODE § 2923.6(c); *Ryan-Beedy v. Bank of N.Y. Mellon*, 293 F. Supp. 3d 1101, 1115 (E.D. Cal. Feb. 22, 2018).  Plaintiffs argue Defendant's violated this provision because Plaintiffs submitted a complete modification application to Seterus in summer 2015, but Defendants proceeded with the foreclosure sale in May 2016 while Seterus was still evaluating Plaintiffs'

---

[1]    Section 2923.6 was repealed on January 1, 2018, but the Ninth Circuit has held that homeowners may still pursue claims brought under the former § 2923.6, because former § 2923.6 was reenacted as § 2924.11, which protects the same rights Plaintiffs seek to enforce in this matter.  *Wheeler v. Specialized Loan Servs.*, 2018 WL 2193673, at *5 n.5 (S.D. Cal. May 14, 2018) (citing *Wilkerson v. Nationstar Mortg., LLC*, 2018 WL 2093321, at *1 (9th Cir. May 7, 2018).

application. (ECF No. 1 at 10, 13 ¶¶ 32, 51.)

Defendants argue an exception, § 2923.6(c)(3), applies. (ECF No. 7 at 22.) Section 2923.6(c)'s protections apply until the borrower accepts a written modification but then defaults on that modification. CAL. CIV. CODE § 2923.6(c)(3). Defendants argue Plaintiffs' allege they received a modification in 2012 and defaulted on the modification in 2014, so per § 2923.6(c)(3) Plaintiffs were not protected by § 2923.6(c) as to their subsequent 2015 modification application. (ECF No. 7 at 22–23.) However, Plaintiffs respond that another subdivision of the section, § 2923.6(g), creates an exemption to the exception in § 2923.6(c)(3). Plaintiffs argue § 2923.6(g) obligates servicers to review modifications of borrowers who had had a material change in their financial circumstances since their last application and provided documentation to the servicer, even if that borrower defaulted on a pre-2013 modification. (ECF No. 9 at 18–19.)

Under § 2923.6(g), a mortgage servicer is not required to evaluate a borrower's modification application if the borrower had already been evaluated for a loan modification prior to January 1, 2013, the date the relevant version of the statute came into effect, "unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and the change is documented by the borrower and submitted to the mortgage servicer." CAL. CIV. CODE § 2923.6(g). The rationale is to "minimize the risk of borrowers submitting multiple [modification] applications…for the purpose of delay." *Id.* Therefore, the servicer need not evaluate a new modification application unless the borrower provides to the servicer documentation of a material change in financial circumstances since the borrower's last application. *Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1046 (N.D. Cal. Feb. 9, 2018).

An unpublished, persuasive Ninth Circuit opinion explains § 2923.6 does apply where a borrower defaulted on a pre-2013 modification, if the borrower provides to the servicer documentation of a material change in financial circumstances since the last application.[2] *Travis v. Nationstar Mortg., LLC*, 2018 WL 2093321, at *1 (9th Cir. May 7, 2018). In *Travis*, the

---

[2]    As an unpublished Ninth Circuit decision, *Travis* is not precedent, but may be considered for its persuasive value. Fed. R. App. P. 32.1; CTA9 Rule 36-3.

plaintiff received a modification in 2011, defaulted on that modification in early 2014, submitted a complete modification application in July 2014, but the defendants foreclosed on the property in April 2015. *Travis v. Nationstar Mortg., LLC*, 2015 WL 12746218, at *1–2 (C.D. Cal. Oct. 14, 2015), *rev'd and remanded*, No. 16-55388, 2018 WL 2093321 (9th Cir. May 7, 2018). The defendants relied on § 2923.6(c)(3) to argue § 2923.6(c) did not apply because the plaintiff had received a modification and default on that modification. *Travis*, 2018 WL 2093321 at *1.

The Court disagreed, noting § 2923.6(c)(3) required the servicer to take steps to avoid dual tracking that did not depend on the modification being the borrower's first, and, in fact, other portions of § 2923.6 only made sense if the prohibition on dual tracking applied to applications for previously modified mortgages. *Travis*, 2018 WL 2093321 at *1 (citing CAL. CIV. CODE § 2923.6(g) and § 2923.6(f)). The Court reasoned § 2923.6(g), therefore, required mortgage servicers to evaluate repeat modification applications if the borrower provided documentation of changed financial circumstances since the prior modification application. *Id.* Because the plaintiff had not alleged sufficient facts the Ninth Circuit remanded to the district court to allow the plaintiff the opportunity to amend his claim. *Id.* at *1–2.

Plaintiffs allege they received a modification in 2012, defaulted on that modification in 2014, and applied for a new modification in 2015. As in *Travis*, Plaintiffs' servicer was obligated to evaluate Plaintiffs' application if Plaintiffs met the requirements of § 2923.6(g), changed financial circumstances since their prior application that are documented for their servicer.

Defendants argue Plaintiffs have not alleged sufficient facts to show that prior to the foreclosure sale, they provided adequate documentation to Seterus of a material change in Plaintiffs' financial circumstances, and so Seterus was not required to evaluate their application under § 2923.6(g). (ECF No. 7 at 22–25.) The statute "does not specify the type of documentation required." *Bondarenko v. Wells Fargo Bank, N.A.*, 2016 WL 1622410, at *5 (C.D. Cal. Apr. 18, 2016). "Courts have found that submitting tax returns alone, a 'barebones' letter asserting a change in income or expenses, or simply [submitting] a new loan modification with different financial information is not sufficient documentation to satisfy the requirements of section 2923.6(g)." *Id.* (citing cases). However, "[a]nother court found that documentation of the

9

elimination of a borrower's credit card debt was sufficient to show a change in financial circumstances." *Id.* (citing *Rosenfeld v. Nationstar Mortg., LLC,* 2014 WL 457920 (C.D. Cal. Feb. 3, 2014)). The *Bondarenko* court found the plaintiffs sufficiently alleged they provided the required documentation when the plaintiffs alleged they submitted a modification application, the defendant then made multiple requests for additional documents, and the plaintiffs provided all the documents the defendant requested. *Id.* The *Bondarenko* court stated it "strains credulity" for the defendant to claim it had not requested documentation of the plaintiffs changed financial circumstances if that documentation were missing from the application. *Id.*

Here, Plaintiffs allege that after Seterus informed Plaintiffs multiple times Plaintiffs' modification application was complete and Seterus would render a decision within 30 days, Seterus then requested multiple additional documents regarding Plaintiffs finances. (ECF No. 1 at 11 ¶¶ 36, 42, 44.) Plaintiffs allege they provided all documents Seterus requested, including a "Borrower's Assistance Form, evidence of income, and tax records," and an updated Profit and Loss statement from their self-owned businesses. (ECF No. 1 at 11–13 ¶¶ 38, 41, 50.) Plaintiffs have alleged sufficient facts to show they provided adequate documentation to Seterus of their changed financial circumstances. *Bondarenko*, 2016 WL 1622410 at *5.

Defendants cite cases that are not factually similar. Defendants cite *Saber*, (ECF No. 13 at 6), in which the plaintiff conceded he failed to plead he submitted the required documentation of changed financial circumstances with his new application. *Saber v. JPMorgan Chase Bank, N.A.*, 2014 WL 255700, *3 (C.D. Cal. Jan. 23, 2014), *aff'd sub nom. Saber v. J.P. Morgan Chase Bank, N.A.*, 650 F. App'x 527 (9th Cir. May 26, 2016). Defendants also cite cases in which borrowers sent letters to servicers regarding changes in their financial circumstances, but did not provide supporting documentation or complete modification applications. (ECF No. 13 at 6) (citing *McLaughlin v. Aurora Loan Servs., LLC*, 2015 WL 1926268, at *6 (C.D. Cal. Apr. 28, 2015) (stating the plaintiffs' letter with only "bare assertions" did not constitute proper documentation); *Williams*, 2014 WL 1568857 at *6 (finding § 2923.6 inapplicable because the plaintiffs never submitted a new modification application); *Ware v. Bayview Loan Servicing, LLC*, 2013 WL 6247236, at *5–6 (S.D. Cal. Oct. 29, 2013) (finding a letter that "simply states"

10

there has been a material change since the plaintiffs submitted their modification application is insufficient).  The cases Defendants cite are distinguishable from the instant case wherein Plaintiffs allege they submitted a complete modification application and provided all additional documents Defendants requested in multiple requests over a number of months.

Because this Court finds, for the purposes of this motion to dismiss, that Plaintiffs have sufficiently alleged they provided adequate documentation to Seterus of a material change in their financial circumstances, Plaintiffs meet the exception under § 2923.6(g) and Seterus was required to evaluate Plaintiffs' modification application.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs fifth claim.

## B.    First Claim: Negligence

Plaintiffs claim Defendants negligently handled their modification application by telling Plaintiffs their application was complete, failing to contact Plaintiffs to ask for additional information, asking them to resubmit documents when Plaintiffs contacted them, providing inaccurate information about their status, and dual tracking.  (ECF No. 1 at16–18 ¶¶ 71–80; ECF No. 9 at 9, 11.)  To state a claim for negligence, a plaintiff must show: (1) the existence of a duty of care; (2) breach of that duty; (3) causation; and (4) damages.  *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).  Defendants argue Plaintiffs' negligence claim fails because Plaintiffs have not pled sufficient facts to show duty of care, causation, or damages.  (ECF No. 7 at 11, 13.)

### i.    Duty of Care

"The defendant's duty of care is a prerequisite to any claim for negligence." *Martinez v. Flagstar Bank, FSB*, 2016 WL 3906810, at *6 (E.D. Cal. July 19, 2016) (citing *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991)).  "Whether a duty of care exists is a question of law." *Id.* (citing *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 986 (9th Cir. 2000)).

"Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal. App. 3d at 1096.  In California, courts determine

whether a financial institution owes a duty of care to a borrower by balancing six factors outlined in *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958):

> "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."

*Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013). "California courts have not settled on a uniform application of these six factors in mortgage cases." *Martinez*, 2016 WL 3906810 at *7. "There is little consensus among California's intermediate appellate courts whether, under certain circumstances, a lender has a duty of care to individual borrowers in discussing home loan modifications." *1617 Westcliff LLC v. Wells Fargo Bank, N.A.*, 686 Fed. Appx. 411, 416 (9th Cir. 2017). "Judges in this district are divided on this question." *Willis v. JPMorgan Chase Bank, N.A.*, 250 F. Supp. 3d 628, 633 (E.D. Cal. April 5, 2017).

One line of cases found a servicer does not owe a borrower a common law duty of care in processing a modification application, *Willis*, 250 F. Supp. 3d at 634, because a modification "is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as lender of money," *Lueras*, 221 Cal. App. 4th at 62. Another line of cases found "a lender does owe a duty of care to a borrower not to make material misrepresentations about the status of an application," and "the *Biakanja* factors weigh in favor of imposing a duty of care on a lender that undertakes to review" a modification. *Alvarez v. BAC Home Loan Servicing, L.P.,* 228 Cal. App. 4th 941, 948–49 (2014) (citing *Lueras*, 221 Cal. App. 4th at 68; *Garcia v. Ocwen Loan Servicing, LLC,* 2010 WL 1881098, *2–4 (N.D. Cal. May 10, 2010))

This Court has found a lender may owe a duty of care in handling a modification application. *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 955 (E.D. Cal. April 24, 2015); *see also Beltz v. Wells Fargo Home Mortg.*, 2017 WL 784910 *6 (E.D. Cal. 2017). This Court has agreed with *Alvarez* that a modification is intended to benefit the borrower, it is "entirely foreseeable that failing to timely and carefully process" the application will harm the borrower, the institution has more power in a modification than for an initial mortgage because

the borrower in a modification has no choice of servicer and no bargaining power, and imposing a duty of care will assist in preventing the future harm HBOR attempts to eliminate by prohibiting "dual tracking." *See id.* (citing *Alvarez,* 228 Cal. App. 4th at 947–49).

The Ninth Circuit Court applied the reasoning from *Alvarez*'s common law negligence claim in its recent decision in *Travis*, evaluating the plaintiffs' complaint for damages for failing to provide communication required by two sections of HBOR during a modification application process. *Travis*, 2018 WL 2093321 at \*2–4. The Ninth Circuit decided the *Travis* plaintiffs' allegations, as in *Alvarez*, were sufficient where the plaintiffs alleged mishandling and delay in processing their application deprived them of the opportunity to obtain a modification or seek other relief. *Travis*, 2018 WL 2093321 at \*2–3. The Ninth Circuit quoted the *Alvarez* court's determination that, "'the mishandling of the documents deprived [the plaintiffs] of the possibility of obtaining the requested relief.'" *Id.* at \*2 (quoting *Alvarez*, 228 Cal. App. 4th at 949; *Garcia*, 2010 WL 1881098 \*3, evaluating a common law negligence claim and finding a lender owed a borrower a duty of care in carrying out the task the lender undertook).

This Court continues to find the *Alvarez* and *Garcia* line of cases more persuasive and concludes the California Supreme Court would most likely find a mortgage servicer may owe a duty of care to a borrower not to make material misstatements or provide inaccurate status updates. *See Ogamba v. Wells Fargo Bank, N.A.*, 2018 WL 558799, at \*4 (E.D. Cal. Jan. 24, 2018). Applying the *Biakanja* factors to Plaintiffs' allegations: (1) the modification was intended to benefit Plaintiffs as an alternative to foreclosure; (2) the harm of Plaintiffs' loss of opportunity to obtain relief elsewhere was "entirely foreseeable" where Defendants told Plaintiffs their application was complete and Defendants would render a decision within 30, days but never did; (3) certainty of injury weighs in Plaintiffs' favor as Plaintiffs allege they "forewent seeking other remedies, …, and lost title to the [P]roperty," (ECF No. 1 at 12 ¶ 75); (4) there was a close connection between the alleged mishandling of the modification and Plaintiffs' lost opportunity to seek relief elsewhere and continue to own the Property; (5) Plaintiffs have not alleged facts sufficient for the Court to infer moral blame; (6) as mentioned, imposing a duty of care assists in preventing the future harm HBOR attempts to eliminate by prohibiting "dual tracking." *Alvarez*,

228 Cal. App. 4th at 950 (stating "[t]he policy of preventing future harm also strongly favors imposing a duty of care on defendants") (citing *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 903 (2013)).

Weighing the six *Biankanja* factors in light of Plaintiffs' allegations, the Court finds Plaintiffs have shown Defendants owed a duty of care to Plaintiffs not to make material misstatements or provide inaccurate or untimely status updates regarding Plaintiffs' modification application and beached that duty. *Ogamba*, 2018 WL 558799 at *4.

*ii.     Causation and Damages*

Causation and damages are required elements for a common law negligence claim. *Merrill*, 26 Cal. 4th at 500. Defendants argue even if a duty existed, Plaintiffs have not shown Defendants caused Plaintiffs any damages. (ECF No. 7 at 13.) Defendants argue Plaintiffs have failed to allege how, why, or when they would have received a modification. (ECF No. 7 at 14.) Further, Defendants argue, Plaintiffs have even stated Plaintiffs do not claim they would have received a modification, so Plaintiffs' modification allegations are irrelevant to damages and no damages are traceable to Defendants' conduct. (ECF No. 13 at 3) (citing ECF No. 9 at 11).

Plaintiffs allege that due to Defendants' mishandling of their application, Plaintiffs "spent time, energy and resources" on the application, have damaged credit and "increased interest and arrears," "forewent" other remedies and solutions, [and] have incurred legal fees and costs." (ECF No. 1 at 17–18 ¶ 80.) In their opposition, Plaintiffs allege those other foreclosure remedies included "borrowing money" and "filing bankruptcy." (ECF No. 9 at 12.)

Courts have found that mishandling of modification documents may deprive a homeowner of the possibility of obtaining the relief requested, even though there was no guarantee the modification would have been approved if properly handled. *Garcia*, 2010 WL 1881098 at *3; *Alvarez*, 228 Cal. App. 4th at 949; *see also Travis*, 2018 WL 2093321 at *2. Even if the homeowner is not able to show he would have obtained a modification but for the defendant's negligence, the homeowner's damages would be affected, but not necessarily eliminated. *Id*.

Those damages must be a type the law allows. *Lueras*, 221 Cal. App. 4th at 79 (finding time and effort assembling an application were "nominal damages" and "the law does not concern

14

itself with trifles"); *see also Newman v. Bank of New York Mellon*, 2017 WL 1831940, at *12 (E.D. Cal. May 8, 2017*); cf. Martinez*, 2016 WL 3906810 at *8 (finding allegations of "a lengthy, distressing, and costly application process and [that the plaintiffs] *would have maintained possession of their home*" sufficient) (emphasis added); *Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1175 (E.D. Cal. Dec. 1, 2016) (allegations sufficient of a credit score reduction of 60-100 points due to the defendant's mishandling of the modification process, as well as lost work time and costs from repeatedly mailing and faxing documents).

The homeowner must allege damages with sufficient specificity. *Ryan-Beedy*, 293 F. Supp. 3d at 1110–11 (finding homeowner's allegations sufficient where she alleged she relied on defendant's promises to forego options which would have allowed her to save her home from foreclosure, such as selling the property to her husband and reinstating bankruptcy protection.); *cf. Travis*, 2018 WL 2093321 at *3 (finding allegation the homeowner would have sought a standard sale if denied a modification lacked sufficient details to survive a motion to dismiss, such as how the foreclosure alternative would have avoided or reduced the alleged damages).

Plaintiffs allege types of damages allowable, such as a lower credit rating or foregoing other remedies. Plaintiffs, however, do not specify in their complaint what reduction in their credit score is attributable to Defendants, which remedies they forwent, and how they would have avoided or reduced damages. Plaintiffs' factual allegations lack sufficient details. *See Clinton*, 225 F. Supp. 3d at 1175 (homeowner alleged his credit score reduced 60-100 points by defendant mishandling his modification); *Ryan-Beedy*, 293 F. Supp. 3d at 1110–11 (homeowner alleged she forwent selling the property to her husband or reinstating bankruptcy protection). Plaintiffs add more detail in their opposition, stating their foreclosure alternatives included borrowing money or filing for bankruptcy, (ECF No. 9 at 12), but those details are not in their complaint and they do not explain how the alternatives would have avoided or reduced damages.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' first claim, with leave to amend, because the Court cannot say at this stage that Plaintiffs are unable to sufficiently allege recoverable damages. *Lueras*, 221 Cal. App. 4th at 77.

///

Defendants argue an oral promise not to exercise the right to foreclose, as Plaintiffs allege, would violate the statute of frauds.  (ECF No. 7 at 15.)  Further, Defendants argue Plaintiffs do not allege facts sufficient to show required elements for these two claims, misrepresentation of a past or existing material fact, knowledge of falsity, and damages.  (ECF No. 7 at 15.)

Defendants argue Plaintiffs allege only oral promises by Defendants to refrain from foreclosing during review of Plaintiffs' modification application.  (ECF No. 7 at 15.)  Defendants argue since they had a right to foreclose under the terms of the written mortgage, any promise to forbear exercising that right must also be in writing to be enforceable.  (ECF No. 7 at 15.)  Plaintiffs respond Defendants are estopped from asserting a statute of frauds defense because Plaintiffs relied on Defendants' misrepresentations and "changed their position by not seeking other foreclosure prevention alternatives…and lost their home."  (ECF No. 9 at 14–15.)

Under California law, an agreement to modify a contract subject to the statute of frauds— such as a mortgage—is also subject to the statute of frauds and must be in writing and signed by the party to be charged to be enforceable.  *Ahmadi v. Nationstar Mortg., LLC*, 2016 WL 7495826, at *7 (C.D. Cal. Mar. 31, 2016) (citing *Secrest v. Security Nat. Mortg. Loan Trust 2002–2*, 167 Cal. App. 4th 544, 553 (2008); CAL. CIV. CODE § 1698.  "A party is estopped to assert the statute of frauds as a defense 'where the party, by words or conduct, represents that he will stand by his oral agreement, and the other party, in reliance upon that representation, changes his position, to his detriment.'"  *Melendez v. U.S. Bank Nat'l Ass'n*, 2015 WL 12866246, at *5 (C.D. Cal. Dec. 3, 2015) (quoting *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031 n.10 (2010)).

Defendants argue Plaintiffs have failed to show detrimental reliance, specifically how Defendants induced Plaintiffs to forego alternatives to avoid foreclosure.  (ECF No. 13 at 4.)  In their complaint, Plaintiffs allege Defendants made misrepresentations and induced Plaintiffs "to participate in the modification process instead of seeking other alternatives." (ECF No. 1 at 20–21 ¶¶ 87, 96.)  In their opposition, Plaintiffs allege they relied on Defendants' misrepresentations, "changed their position by not seeking other foreclosure prevention alternatives, and as a result, lost their home."  (ECF No. 9 at 15.)  As discussed, Plaintiffs fail to sufficiently allege which

remedies they forwent, how they would have pursued those remedies, and how those remedies would have avoided the foreclosure. *Ryan-Beedy*, 293 F. Supp. 3d at 1110–11 (homeowner alleged she forwent selling the property to her husband or reinstating bankruptcy protection).

Later in their complaint, Plaintiffs describe the alternatives as "borrowing money to cure the default from family or friends, attempting to short sell the [P]roperty or by reorganizing their debts through a Chapter 13 Bankruptcy." (ECF No. 1 at 24 ¶ 106.) In other portions of their opposition, Plaintiffs describe their alternatives as "borrowing money to pay the debt or filing for bankruptcy." (ECF No. 9 at 12.) Though Plaintiffs state these alternatives exist, Plaintiffs do not allege which alternatives were available to them, how Plaintiffs would have pursued them, why they could not pursue them during the modification process, and how they would have avoided foreclosure. *See Ryan-Beedy*, 293 F. Supp. 3d at 1110–11. Further, none of these alternatives are listed in Plaintiffs' complaint in either the general allegations or in relation to the second or third claims. The Court, therefore, cannot consider these statements in evaluating these claims for dismissal. *Melendez*, 2015 WL 12866246 at *5 (citing *Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, 2012 WL 1094324, at *4 (N.D. Cal. Mar. 29, 2012), stating "a party cannot, however, supplement its pleadings by way of its motion papers"). Plaintiffs have not alleged sufficient facts to show Defendants are estopped from asserting a statute of frauds defense.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' second and third claims, with leave to amend, because Plaintiffs may be able to satisfy the statute of frauds and any other deficiencies through amendment. *Livermore v. Wells Fargo Bank*, 2017 WL 6513649, at *7 (N.D. Cal. Dec. 20, 2017). Because the basis for dismissal is dispositive of the motion to dismiss both Plaintiffs' second and third claims, the Court does not address Defendants' remaining arguments regarding these claims. *Gabris v. Aurora Loan Servs. LLC*, 2015 WL 1021305, at *4 (E.D. Cal. Mar. 9, 2015).

### D. Fourth Claim: Wrongful Foreclosure

Defendants argue Plaintiffs' claim for wrongful foreclosure fails because Plaintiffs fail to allege a plausible offer of tender. (ECF No. 7 at 20–22.) Plaintiffs allege they are excused from tender because Defendants foreclosed on the Property while Plaintiffs were in review for a loan

modification, and requiring tender would be inequitable because the modification would have allowed them to cure the default.  (ECF No. 1 at 15–16 ¶ 69, 22–23 ¶ 100.)

To state a claim for wrongful foreclosure, a plaintiff must allege: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale...was prejudiced or harmed; and (3)...the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. Sept. 25, 2013) (citing *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).  "The rationale behind the [tender] rule is that if the borrower could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the borrower." *Majd v. Bank of Am., N.A.*, 243 Cal. App. 4th 1293, 1305 (2015), *as modified* (Jan. 14, 2016).  "Such suits are essentially futile." *Id*.

This is not a case of wrongful foreclosure in which Plaintiffs merely allege procedural irregularities.  Rather, Plaintiffs argue the foreclosure should not have taken place at all because it violated § 2923.6's prohibition against dual tracking.  (ECF No. 1 at 22–23 ¶ 100.)

"[C]ourts are divided on whether tender is required to satisfy a section 2923.6 claim." *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *8 (C.D. Cal. Sept. 3, 2014).  Some courts require tender when § 2923.6 claims are brought in conjunction with common law actions for wrongful foreclosure.  *Id*.  Other courts refused to require tender where the plaintiffs brought dual tracking claims.  *Id*.  "The purpose of the modification rules is to avoid a foreclosure despite the borrower being incapable of complying with the terms of the original loan.  It would be contradictory to require the borrower to tender the amount due on the original loan in such circumstances." *Majd*, 243 Cal. App. 4th at 1306.  As the *Majd* court explained, the purpose of tender is to dismiss futile suits where the borrower could not pay the amount due if she prevailed, but this does not apply to dual tracking suits because a modification is an alternative to foreclosure that does not require the borrow to pay the amount due under the original terms.  *Id*.

The court in *Ryan-Beedy* held the plaintiff did not need to tender in a dual tracking suit where the borrow alleged she dismissed her bankruptcy case based on the defendants' assurances,

the defendants failed to properly review her application, and then they foreclosed despite assuring her the foreclosure sale would be postponed upon receipt of a complete application. *Ryan-Beedy*, 293 F. Supp. 3d at 1101; see also *Majd*, 243 Cal. App. 4th at 1307 (stating "plaintiff alleged prejudice in that he may have been able to avoid the foreclosure had [the defendant] completed the modification review process in good faith. Plaintiff was excused from tendering."). Plaintiffs allege that with a modification they could have cured their deficiency without having to pay the amount due, but Defendants foreclosed while Plaintiffs complete application was pending. It would be contradictory to require Plaintiffs to tender the amount due in these circumstances, so Plaintiffs were excused from tender. *Majd*, 243 Cal. App. 4th at 1306

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs fourth claim.

E.     Sixth Claim: Violation of California Civil Code § 2923.7

Plaintiffs assert Seterus violated California Civil Code § 2923.7 for failing to provide Plaintiffs a single point of contact. (ECF No. 1 at 24–25 ¶¶ 107–12) Section 2923.7 requires that a "mortgage servicer" provide "a borrower who requests a foreclosure prevention alternative" with "a single point of contact." CAL. CIV. CODE § 2923.7(a). "[T]he California legislature [] enacted a 'single point of contact provision' to prevent borrowers from being given the run-around." *Rockridge Tr. v. Wells Fargo NA*, 2014 WL 688124, at *23 (N.D. Cal. Feb. 19, 2014). Defendants argue Plaintiffs do not allege sufficient facts to show this provision applies to Seterus, Plaintiffs do not allege specific facts showing how the section was violated, and Plaintiffs were not entitled to a single point of contact to evaluate their modification. (ECF No. 7 at 26–27.)

Section 2923.7 does not apply to entities that foreclosed on 175 *or fewer* residential real properties during the past year. CAL. CIV. CODE § 2923.7. Plaintiffs allege Defendants foreclosed on 175 *or more* residential real properties. (ECF No. 1 at 25 ¶ 111.) Plaintiffs, therefore, allege § 2923.7 may not apply to Defendant if Defendants foreclosed on exactly 175 properties, or may apply to Defendants if Defendant foreclosed on more than 175 properties. It is not clear from the record whether Seterus is the type of servicer to which this section applies, so the Court proceeds as if this section is relevant. *Greenwood v. Wells Fargo Bank, NA*, 2015 WL 12781208, at *4 (C.D. Cal. Nov. 10, 2015) (proceeding as if the section were relevant due to

19

inability to determine from the record whether the section applied to the defendant) (citing *Rockridge*, 2014 WL 688124, at *21 (N.D. Cal. Feb. 19, 2014), stating similar provision was applicable due to inability to determine what type of servicer the defendant is from the record).

Section 2923.7 allows for a team of representatives to serve as the single point of contact, but, "each member of the team [must be] knowledgeable about the borrower's situation." CAL. CIV. CODE § 2923.7(e). Defendants argue Plaintiffs did not plead "facts explaining who the points of contact were, how many different point of contacts Defendant assigned, or the circumstances or timing of such reassignments." (ECF No. 7 at 27) (citing *Rahbarian v. JP Morgan Chase*, 2014 WL 5823103, at *4 (E.D. Cal. Nov. 10, 2014)). The *Rahbarian* plaintiff's only allegation, however, was the defendant "used multiple points of contact," without providing detail, such as whether this meant multiple, successive individuals as the points of contact or a team. *Id.* at *4. Courts have found violations where the plaintiff alleged team members provided conflicting or inaccurate information and the plaintiff's property was then sold without the plaintiff knowing. *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 875 (N.D. Cal. Dec. 1, 2015).

Here, Plaintiffs allege they were not assigned an individual contact, were told anyone on a team that answered their calls could assist them, and that team members were not knowledgeable. (ECF No. 1 at 11 ¶ 34.) Plaintiffs allege specific dates on which they called Seterus, that team members instructed Plaintiffs to resubmit documents they already submitted and told Plaintiffs their application was complete multiple times, but then later requested other documents. (ECF No. 1 at 11 ¶¶ 42–44, 49, 50.) Plaintiffs also allege they did not know the Property had been sold until they called Seterus days after the sale to check the status of their application. (ECF No. 1 at 11 ¶¶ 36, 37, 42–44, 49, 50.) Plaintiffs sufficiently alleged Seterus failed to appoint a single point of contact "knowledgeable about the borrower's situation." *Green*, 148 F. Supp. 3d at 875.

Finally, Defendants note that under § 2923.7 a borrower is only entitled to a single point of contact "until the mortgage servicer determines that all loss mitigation options … have been exhausted." (ECF No. 7 at 26) (quoting CAL. CIV. CODE § 2923.7(c)). Defendants argue that since Plaintiffs defaulted on a prior modification, they "were not entitled to a modification review, [and] it logically follows they were not entitled to a single point of contact." (ECF No. 7

at 26.)  Defendants cite no authority for their proposition that a mortgage servicer that agrees to evaluate a borrower's modification application is excused from the requirements of § 2923.7 if the mortgage servicer was not required to agree to evaluate the modification application. "[C]ourts not only analyze dual tracking and [single point of contact] violations separately, but they also have allowed a [single point of contact] claim to survive a motion to dismiss despite dismissing a dual tracking claim because of a plaintiff's failure to qualify for the material change exception." *McLaughlin v. Aurora Loan Servs.*, LLC, 2015 WL 1926268, at *7 (C.D. Cal. Apr. 28, 2015) (citing *Mann v. Bank of Am., N.A.*, 2014 WL 495617 at *3–4 (C.D. Cal. Feb. 3, 2014), dismissing the § 2923.6 claim for failure to sufficiently allege a material change in the borrower's financial circumstances, but not dismissing the plaintiffs' § 2923.7 claim because the plaintiffs alleged sufficient facts for a single point of contact violation; and *Salazar v. U.S. Bank Nat'l Ass'n*, 2015 WL 1542908 at *3–7 (C.D.Cal. Apr. 6, 2015), dismissing the plaintiffs' §2923.6 claim for wrongful foreclosure but not the § 2923.7 claim).

"Under the plain meaning of the statute, a mortgage servicer's obligation to establish a single point of contact is triggered" upon a borrower's request for a foreclosure prevention alternative. *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 874 (N.D. Cal. Dec. 1, 2015) (citing *Mungai v. Wells Fargo Bank*, 2014 WL 2508090, at *9 (N.D. Cal. June 3, 2014).  Plaintiffs requested a foreclosure prevention alternative, a modification, and Seterus was obligated to provide a single point of contact knowledgeable about Plaintiffs application.  Plaintiff has alleged Defendant did not provide a single point of contact.  Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' sixth claim.

F.      Seventh Claim: Unfair Competition Law ("UCL")

Plaintiffs allege that Defendants engaged in unlawful, unfair, and/or fraudulent business practices because Defendants violated California Civil Code  §§ 2923.6(c) and 2923.7.  (ECF No. 1 at 26 ¶ 115.)  Defendants argue Plaintiffs' UCL claim fails because Plaintiffs' underlying claims for violations of §§ 2923.6(c) and § 2923.7 fail.  (ECF No. 7 at 28.)

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.  "A plaintiff alleging unfair business practices under these statutes

must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (citations omitted). A complaint fails to state a claim if it "identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularity the facts supporting violation." *Helmer v. Bank of Am., N.A.*, 2013 WL 4546285, at *8 (E.D. Cal. Aug. 27, 2013).

The Court has determined Plaintiffs alleged sufficient facts to support their claims for violations of § 2923.6(c) and § 2923.7, therefore, Plaintiffs have sufficiently alleged their UCL claim. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' seventh claim.

G.     Eighth Claim: Intentional Infliction of Emotional Distress ("IIED")

Plaintiffs assert Defendants engaged in extreme and outrageous conduct by "foreclosing on the [] Property when it had no authority to do so." (ECF No. 1 at 27 ¶ 121.) Defendants argue it cannot be considered "extreme or outrageous" conduct to foreclose pursuant to a provision in the Deed of Trust after Plaintiffs defaulted. (ECF No. 7 at 29.)

To state a claim for IIED, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or with reckless disregard of the probability of causing, emotional distress; (2) plaintiff suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "The conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1124 (E.D. Cal. Feb. 18, 2014).

Here, Plaintiffs do not provide factual allegations or authority to support their conclusory statement that Defendants' act of foreclosing on the Property while Plaintiffs were in default was extreme and outrageous. A creditor's conduct in attempting to collect a debt is outrageous, as required to support a claim for IIED, only if it exceeds all reasonable bounds of decency. *Flores*, 997 F. Supp. 2d at 1124. "Whether conduct is outrageous is usually a question of fact." *Hawkins v. Bank of Am. N.A.*, 2017 WL 590253, at *5 (E.D. Cal. Feb. 14, 2017). However, when a plaintiff alleges "no conduct of defendants outside that generally accepted in loan servicing and/or foreclosure," the claim fails. *Flores*, 997 F. Supp. 2d at 1124.

Plaintiffs allege Defendants were obligated not to foreclose while evaluating Plaintiffs' modification application, and promised not to foreclosure during the evaluation. However, Plaintiffs do not provide authority to support their assertion Defendants' conduct was extreme and outrageous. Courts evaluating similar claims have determined the allegations are not sufficient to survive a motion to dismiss. *Farren v. Select Portfolio Servicing, Inc.*, 2017 WL 1063891, at *6 (E.D. Cal. Mar. 20, 2017) (citing *Martinez v. Flagstar Bank, FSB*, 2016 WL 3906810 (E.D. Cal. Jul. 19, 2016), dismissing the IIED claim where the plaintiffs alleged that defendants lost and mismanaged their loan modification application materials, required the plaintiffs to resubmit documents many times, promised not to foreclosure, and then sold the home in foreclosure; and *Aguinaldo v. Ocwen Loan Servicing, LLC*, 2012 WL 3835080 (N.D. Cal. Sep. 4, 2012), dismissing the IIED claim where the plaintiffs alleged that defendant promised not to foreclose, plaintiffs relied on that promise in choosing not to pursue alternative measures to prevent foreclosure, and the defendant foreclosed). Plaintiffs do not allege sufficient facts to show Defendants engaged in extreme or outrageous conduct by foreclosing on the Property.

Plaintiffs do not address Defendants' argument that non-judicial foreclosures are privileged under the litigation privilege in California Civil Code § 2924(d). Plaintiffs do cite two cases to support their argument that Plaintiffs sufficiently pled emotional distress, (ECF No. 9 at 24), but Defendants have not challenged that element. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' eighth claim, with leave to amend.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss, (ECF No. 7):

1. The Court GRANTS Defendant's Motion to Dismiss as to Plaintiffs' First, Second, Third, and Eighth claims;

2. The Court DENIES Defendants' Motion to Dismiss as to Plaintiffs' Fourth, Fifth, Sixth, and Seventh claims; and

3. The Court GRANTS Plaintiffs fourteen (14) days from the date of this Order to file an amended complaint.

23

IT IS SO ORDERED.

Dated: June 14, 2018

Troy L. Nunley
United States District Judge